## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIELLE GEORGE,** | : | **Civil No. 4:13-CV-2803** |
| | : | |
| **Plaintiff,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Social security appeals often entail an evaluation of an Administrative Law Judge's assessment of competing opinions by medical sources.  So it is in this case, where the ALJ afforded little weight to an opinion set forth in the claimant's treating source physician statement after correctly concluding that the statement, on its face, appeared to have been written in large measure by someone other than the treating physician since the report used the pronoun "I" when describing the claimant and misspelled basic medical terms.

Plaintiff, Danielle George, appeals from an adverse decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  The jurisdiction of this

Court is invoked pursuant to 42 U.S.C. §405(g). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties for resolution pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docs. 24, 25). For the reasons expressed herein, we will **AFFIRM** the decision of the Commissioner.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a mother of two, lives with her family in a home which they maintain. Plaintiff filed an application for DIB on January 5, 2011,when she was 30 years old, contending that her neck and back pain, arm and hand problems, severe headaches, memory loss, and learning disability prevented her from engaging in full time employment as after she was injured in a car accident on May 28, 2010. (Tr. 33, 160).

Plaintiff's application was denied initially on February 25, 2011. Thereafter, Plaintiff requested an administrative hearing to appeal the initial denial of her claims. Her request was granted, and on June 29, 2012, Plaintiff, represented by counsel, appeared and testified before Administrative Law Judge (ALJ) Patrick Cutter in Harrisburg, Pennsylvania. Impartial Vocational Expert (VE) Andrew Caporale also appeared and testified during the proceedings. On July 9, 2012, the ALJ issued a written decision denying Plaintiff's application. Plaintiff requested review of the ALJ's decision by the Appeals Council. As part of her request for review, Plaintiff

submitted additional evidence to the Appeals Council that was not before the ALJ when he rendered his decision.  (Tr. 5, 484-91).  On October 21, 2013, the Appeals Council denied Plaintiff's request for review, but subsequently set aside its earlier action to consider additional information.  On December 20, 2013, however, the Appeals Council denied review for a second time making the ALJ's decision denying Plaintiff's claims the final decision of the Commissioner subject to judicial review by this Court.  20 C.F.R. §§404.981.

On November 15, 2013, Plaintiff initiated this action by filing a Complaint in which she requested that we reverse the Commissioner's final decision denying her application and enter an order awarding benefits, or in the alternative, that this matter be remanded to the Social Security Administration for a new administrative hearing. (Doc. 1).  After being granted an extension of time, the Commissioner filed her Answer to Plaintiff's Complaint, in which she asserted that the final decision of the Commissioner denying Plaintiff's application for benefits is supported by substantial evidence and should not be disturbed.  (Doc. 13).  Together with her Answer, the Commissioner filed a copy of the administrative record.  (Doc. 14).  This appeal, has been fully briefed by the parties and is now ripe for decision.  (Docs. 21, 22).

## III.   DISCUSSION

Plaintiff contends that the Commissioner's decision that she is able to perform "other work," is not supported by substantial evidence because the ALJ improperly accorded little weight to a 2012 medical source statement completed by treating orthopedist Raymond E. Dahl, D.O., and because the ALJ failed to consider or explain his evaluation of the factors set forth in 20 C.F.R. §404.1529 and SSR 96-7p when assessing Plaintiff's credibility.   As discussed below, there is substantial evidence which casts doubt upon the weight to be given this medical source opinion, which was plainly prepared in part by someone other than the treating physician, someone who used the pronoun "I" to describe the claimant's condition.  In response, the Commissioner asserts that the ALJ's decision at step five is supported by substantial evidence.

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the

claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42U.S.C. §423(d)(1)(A).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).  Further in order to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

### 1.    The Sequential Evaluation Process

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520;

see also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520(a)(4).  As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520(a)(4).

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §404.1545.  In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments.  20 C.F.R. §404.1545(a)(2).  This disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that

jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## 2.    Legal Benchmarks for the ALJ's Assessment of Competing Medical Opinions

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [the claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [he or she] can still do despite [his or her] impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2).  Although it is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), the ALJ "cannot reject evidence for no reason or the wrong reason." Plummer, 186 F.3d at 429 (3d Cir. 1999)(citing Mason , 994 F.2d at 1066).

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered.  "[A] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time." Morales, 225 F.3d at 317(citations omitted).  The Social Security Regulations provide that:

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case  record, [the ALJ] will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p.

8

In cases where the ALJ finds that no treating source opinion is entitled to controlling weight, however, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors:  (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization.   20 C.F.R. §404.1527(c).  In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention.  20 C.F.R. §404.1527(c)(6).

### 3.   Legal Benchmarks for the ALJ's Assessment of a Claimant's Credibility

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility.   <u>Frazier v. Apfel</u>, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(<u>quoting</u> <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 531(6th Cir. 1997)).  Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements.  SSR 96-7p.  The ALJ may find all, some, or none of the

claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. § 404.1529; SSR 96-7p.  First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. § 404.1529(b); SSR 96-7p.  During the second step of his or her credibility assessment, the adjudicator must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record.  20 C.F.R. § 404.1529(c); SSR 96-7p.  This includes, but is not limited to:  medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work.  Id.  The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their

symptoms to a greater or lesser extent than other individuals with the same medical

impairments, signs, and laboratory findings.  SSR 96-7p.  Thus, to assist in the

evaluation of a claimant's subjective symptoms, the Social Security Regulations

identify seven factors which may be relevant to the assessment of the severity or

limiting effects of a claimant's impairment based on a claimant's symptoms.  20

C.F.R. §§404.1529(c)(3).  These factors include:  activities of daily living; the

location, duration, frequency, and intensity of the claimant's symptoms; precipitating

and aggravating factors; the type dosage, effectiveness, and side effects of any

medication the claimant takes or has taken to alleviate his or her symptoms;

treatment, other than medication that a claimant has received for relief; any measures

the claimant has used to relieve his or her symptoms; and, any other factors

concerning the claimant's functional limitations and restrictions.  Id.

### 4.    Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility

of this Court to independently review that finding.  In undertaking this task, this

Court applies a specific, well-settled and carefully articulated standard of review.  In

an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of

Social Security denying a claim for disability benefits, the "findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the

decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).  In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## B.    The ALJ's Decision

At the outset, we note that in the in the Commissioner's final decision the ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2014, and proceeded through each step of the five-step sequential evaluation process.  In doing so, the ALJ found at step one that Plaintiff had not engaged in any substantial gainful activity between her alleged onset date and the date of decision.  (Tr. 14).  At step two, the ALJ found that Plaintiff's impairments due to right brachial plexopathy and headaches were "severe" in that they had more than a minimal effect on her ability to perform basic work activities, but found that Plaintiff's impairment due to gall bladder disease, hernias, right leg and knee pain, affective disorder and memory loss were medically determinable but non-severe.  (Tr. 14-16).  At step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P Appendix

1. (Tr. 16).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC based on his review of all the relevant evidence in Plaintiff's case record, which contains Plaintiff's testimony, medical treatment notes from various providers, the results of several diagnostic tests, and two medical opinions.   The medical opinions of record include both a treating source opinion signed by Dr. Raymond Dahl, (Tr. 478-83), and non-examining state agency medical consultant Ngia Van Tran, M.D.  (Tr. 65-66). The opinion by the state agency medical consultant, was issued on February 15, 2011. In that opinion the state agency medical consultant concluded that Plaintiff retained the requisite functional capacity to occasionally lift or carry twenty pounds and frequently lift or carry ten pounds, stand or walk up to six hours per eight hour workday, sit up to six hours per eight hour workday and had no additional postural limitations.

More than one year later, on June 6, 2012, Dr. Dahl signed a medical source statement in which it was stated that Plaintiff could never lift or carry any weight; sit or stand up to two hours per eight hour workday; walk up to three hours per workday; never reach or finger with her right hand; occasionally handle, feel or push and pull with her right hand; occasionally operate foot controls with her right foot and continuously operate foot controls with her left foot; never climb stairs, ladders or

scaffolds, kneel, crouch or crawl; and occasionally balance.  The same document stated that Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, extreme heat, or vibrations, and could occasionally tolerate exposure to dust, odors, fumes or pulmonary irritants.  The provenance of this medical source statement was entirely suspect, and bore clear signs that it was completed, at least in part, by the claimant rather than her physician.  The 2012 medical source statement was plainly completed in two different sets of handwriting.  Further, one author who contributed to the report used the pronoun "I" throughout and spelled the word *numbness* as "knubness."  It is highly unlikely that Dr. Dahl would have confused his pronoun usage in this fashion if he had written these passages and confused the first and third person pronouns.  It is even more unlikely that the doctor, a highly trained medical professional, would have be unable to correctly spell numbness.  We note that the medical source statement was composed of both narrative and check box sections, making it difficult to ascertain which author completed which the check-box portions of this assessment.

After weighing this evidence and based on his consideration of the record as a whole, ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§404.1567(b)  except that:

15

the claimant can only occasionally climb, balance, stoop, kneel, crouch, or crawl; there should be no overhead work with the right arm and no repetitive use of the right arm, with "repetitive" defined as "the same action or motion without interruption except for normal breaks." The right arm should only be used to assist with lifting and carrying, and there should be no constant fixation of the neck, tilted up or down on a constant basis. The claimant also has a moderate limitation in the ability to maintain attention and concentration and in the ability to remember and carry out detailed instructions, with "moderate" defined as more than slight limitation, but the function can still be performed on a consistent basis to be satisfactory to an employer.

(Tr. 16).

At step four, applying the above RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a tax office manager (light, skilled), hardware store manager (medium, skilled), or shipping warehouse supervisor (heavy, skilled), as actually or as generally performed in the national economy. (Tr. 19, 53). At step five, considering Plaintiff's age (younger person), education (high school), work experience, and the above RFC, the ALJ concluded that the combination of Plaintiff's severe and non-severe impairments did not preclude the performance of "other work." The ALJ supported his assessment with testimony by the VE that a person of the same age, and with the same education, work experience and RFC as Plaintiff could meet the physical and mental demands of representative occupations such as baker worker (conveyor line), office helper, and marker. (Tr. 53-54).

**C.      The ALJ Properly Discounted Dr. Dahl's Medical Source Statement**

In her brief, Plaintiff contends that the ALJ erred in rejecting the 2012 medical source statement signed by Dr. Dahl stating that Plaintiff had limitations that would preclude the performance of even sedentary work, based on the ALJ's belief that the statement was authored, at least in part, by someone other than Dr. Dahl.   At the outset, we note that the ALJ accorded "little weight" to Dr. Dahl's medical source statement for several reasons which are clearly articulated in his decision, and did not, as Plaintiff contends, reject the statement in its entirety based solely on his own speculation that a second unidentified person completed portions of the opinion.   In discounting Dr. Dahl's medical source statement, the ALJ found that:

> Dr. Dahl's opinion of October 2011 indicating that the claimant is unable to work, even at a sedentary position, is inconsistent with his opinion from 3 weeks earlier, which contains an opinion based upon physical examination and clinical findings that the claimant *is* capable for sedentary work.   I note that [in the medical source statement] Dr. Dahl found the claimant could perform activities of daily living, including cooking and care for personal hygiene, can ambulate without assistance, and can go places unassisted.   These findings were rendered for the sole purpose of receiving medical assistance and are inconsistent with his clinical findings of record.   Further Dr. Dahl appears to have relied on the subjective complaints of the claimant, whom I have already found not fully credible.   Finally, I also note that the Medical Source Statement appears to have been filled out at least in part by someone other than Dr. Dahl because the pronoun "I" is used to list symptoms and complaints; the person that completed the Medical Source Statement spelled *numbness* as "knubness"; and it is observed that the Medical Source Statement was completed in 2 different handwriting styles.

17

(Tr. 19)(*emphasis in original*)(internal citations omitted).

The ALJ's numerous justifications for discounting Dr. Dahl's 2012 medical source statement – because it was inconsistent with his clinical findings, and because it was based primarily upon Plaintiff's subjective complaints –have long been held to be proper bases to discount the opinion of a treating source. See 20 C.F.R. §404.1527; Morris v. Barnhart, 78 Fed.Appx. 820, 825 (3d Cir. 2003)("An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.").

Furthermore, assuming *arguendo*, that Dr. Dahl was the sole author of the 2012 medical source statement, we find that the ALJ's conclusion that Dr. Dahl's opinions in his October 20, 2011, and January 24, 2012, treatment notes, and 2012 medical source statement stemmed from an over-reliance on Plaintiff's subjective complaints is a reasonable one. The record contains notes from four examinations by Dr. Dahl conducted on June 15, 2011, September 15, 2011, October 20, 2011, and January 24, 2012. (Tr. 383-84, 474-76). Notably, on September 15, 2011, Dr. Dahl reported that, based on the result of a functional capacity evaluation and EMG study, Plaintiff was

18

capable of "sedentary duty."[1]  (Tr. 476).  During Plaintiff's next examination, on

October 20, 2011, Plaintiff presented with complaints of increasing pain.  Dr. Dahl

attributed Plaintiff's reports of increased pain to the cessation of ibuprofen and

opined that Plaintiff's brachial plexopathy was not worsening.  During the same

examination, however, Dr. Dahl inexplicably opined that Plaintiff was not able to

return to work in any capacity.  Thus, given the noted internal inconsistency in Dr.

Dahl's notes and the absence of any objective evidence of any deterioration of

Plaintiff's condition, the ALJ reasonably interpreted that the change in Dr. Dahl's

October 20, 2011, and January 24, 2012, treatment notes and 2012 medical source

statement was due, in large part, to Plaintiff subjective reports of increasing pain.

Moreover, the ALJ accurately observed that the notes from the latter two

examinations, and the 2012 medical source statement were inconsistent with the

---

[1] A two-day functional assessment conducted by an occupational therapist and ordered by Dr. Dahl reflects that, as of June 22, 2011, Plaintiff had a functional active range of motion (AROM) in her upper and lower extremities despite some limitations in strength.  (Tr. 386-92).  The functional capacity assessment also reflects that Plaintiff could occasionally (up to 1/3 of each workday) lift between twenty and thirty pounds and frequently (between 1/3 and 2/3 of each workday) lift between ten and fifteen pounds.  The functional capacity assessment also reflects that Plaintiff could occasionally perform standing work, walk, and sit; it was recommended that Plaintiff be permitted to change positions during the workday.  It was also noted that Plaintiff could frequently crouch, kneel, and climb stairs and ladders, but her hand strength was observed to be lower than average considering her age and gender.

objective medical evidence of record.  Accordingly, because substantial evidence supports the ALJ's decision to discount Dr. Dahl's October 20, 2011, and January 24, 2012, treatment notes and 2012 medical source statement we are compelled to conclude that the ALJ properly discounted Dr. Dahl's 2012 medical source statement.

Plaintiff also alleges that, pursuant to 20 C.F.R. 404.1512(e), the ALJ was obligated to recontact Dr. Dahl to identify what portions of the 2012 medical source statement he authored and identify the individual responsible for the second set of handwriting.  We conclude that the ALJ was under no obligation to contact Dr. Dahl under the cited regulation.  Section 404.1512(e) addresses consultative examinations – an issue not raised by Plaintiff.  Furthermore, the regulatory provisions governing when it is appropriate to recontact a medical provider apply "[i]f the evidence is consistent *but we have insufficient evidence to determine whether you are disabled*, or if after weighing the [consistent and inconsistent] evidence we determine we cannot reach a conclusion." 20 C.F.R. §404.1520b(c)(1)(emphasis added).[2]  Here, the ALJ did not run afoul of these provisions because he correctly considered the record adequate to make a decision.  Moreover, because the decision to recontact a treating

---

[2] In March 2012, several months before the ALJ issued his July 2012 decision, the recontact provision of 20 C.F.R. §404.1512(e) was removed and incorporated in 20 C.F.R. §404.1520b(c).  See How we Collect and Consider Evidence of Disability, 76 Fed.Reg. 20282-01 (proposed Apr. 12, 2011)(codified at 20 C.F.R. pt. 404).

source for clarification is well within the discretion of the ALJ, and because the ALJ

offered additional justification beyond his suspicions regarding the second author of

the 2012 medical source statement, it is unlikely that any clarification from Dr. Dahl

would result in a different outcome.  See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th

Cir. 1989)("No principle of administrative law or common sense requires us to

remand a case in quest of a perfect opinion unless there is reason to believe that the

remand might lead to a different result.")

Last, Plaintiff asserts that the ALJ erred in according great weight to the

opinion of the state agency medical reviewer because the assessment was completed

prior to Plaintiff's June 2011 abnormal EMG study.  We similarly find that this

argument lacks merit.  The Third Circuit has observed that, "there is always some

time lapse between the consultant's report and the ALJ hearing and decision.  The

Social Security regulations impose no limit on how much time may pass between the

consultant's report and the ALJ hearing and decision."  Chandler v. Comm'r of Soc.

Sec., 667 F.3d 356, 361 (3d Cir. 2011).  Furthermore, although opinions by treating

and examining sources often deserve more weight than opinions of nonexamining

sources, where "the opinion of a treating physician conflicts with that of a non-

treating, non-examining physician, the ALJ may choose whom to credit but cannot

reject evidence for no reason or for the wrong reason."  Morales v. Apfel, 225 F.3d

310, 317 (3d Cir. 2000). Here, though he accorded great weight to the opinion of the state agency consultant, the ALJ's decision reflects that he closely scrutinized the non-examining source's assessment and found that it was consistent with the record taken as a whole. The ALJ's careful consideration of this evidence is illustrated by the fact that he imposed additional restrictions that the state agency consultant did not deem necessary based on the extent to which Plaintiff's subjective testimony was supported by the subsequent EMG study and functional assessment. Accordingly, we find that the ALJ's decision to accord great weight to the opinion of the state agency consultant is well-reasoned and well explained.

### D.    The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints

During her administrative hearing, Plaintiff described the intensity, persistence, and limiting effects of her impairments. Plaintiff reported that her impairments affect her abilities to: lift, bend, reach, sit, climb stairs, remember, complete tasks, concentrate, and use her hands. (Tr. 180). Plaintiff stated that she experiences sharp and tense neck and arm pain on a daily basis and that she has unsuccessfully attempted to reduce her pain by applying heating pads, taking hot baths, physical therapy, and by taking steroid injections. (Tr. 35-36, 47). She reported that she had a bad reaction to her first injection, and that it was recommended that she not receive

further injections.  Id.  She testified that, though surgery had been discussed, Plaintiff

was told that it would likely do her more harm than good.  Id.  Plaintiff also reported

that she experiences daily knee pain, which she attributes to the 2010 motor vehicle

accident.  (Tr. 49).  In addition to her neck, arm and knee pain. Plaintiff stated that

she also experiences headaches five days per week, and often feels sad because her

impairments preclude her from the performance of many activities she used to enjoy.

(Tr. 37).  She testified that, due to her impairments she is reliant upon her husband

to make breakfast, do laundry and assist her in the completion of several personal care

tasks, and admitted that she tries to do the dishes but usually cannot finish them.  (Tr.

38).  Plaintiff also asserted that, due to her neck and arm pain, she is unable to hold

her head up to read or use a computer, is unable to hold a phone to her ear for more

than a few minutes and often drops things.  In a function report form dated January

2011, Plaintiff admitted that, despite her impairments, she is able to care for her

daughters and several animals – including a dog and some chickens.  (Tr. 176).

Plaintiff also reported that she is able to prepare meals, fold clothes and shop in stores

for groceries.  (Tr. 177-78).

    In his decision, the ALJ found that Plaintiff's subjective complaints were not

credible to the extent they were inconsistent with his RFC assessment.  (Tr. 17).

Specifically the ALJ stated Plaintiff's testimony only partially credible because her

self-reported activities of daily living and conservative course of medical treatment were inconsistent with her reports of disabling pain, as were her statements to her physical therapist in June 2010 that she was "about 50% improved," and in July 2010 that she was "65% improved," when compared to her hearing testimony that physical therapy only made her pain worse.  (Tr. 18, 47, 268, 278).

Plaintiff contends that the ALJ erred by failing to provide meaningful analysis and consideration of the required regulatory factors, and that this error renders the ALJ's RFC assessment defective.  In particular, Plaintiff asserts that the ALJ did not properly consider her abnormal EMG results, Dr. Gipes' diagnosis of whiplash syndrome, or Dr. Dahl's later diagnosis of  of right brachial plexopathy and severe neck pain in accordance with 20 C.F.R. §404.1529, and SSR 96-7p when he found that the intensity, persistence and limiting effects of Plaintiff's impairments were not as severe as Plaintiff alleged.  (Doc. 21 p. 14-15).  Plaintiff further contends that her testimony on the issue of her work capabilities is entitled to significant credibility due to her strong work history.

With respect to Plaintiff's assertion that the ALJ failed to consider the above-mentioned objective medical records in accordance with 20 C.F.R. §404.1529 and SSR 96-7p, we disagree.  The ALJ expressly stated in his decision that "[a]n EMG and motor nerve study were conducting on the claimant in June 2011.  After

24

examination, the claimant's neurological consultant stated that the claimant's brachial plexopathy is responsible for most, if not all, of her pain in the upper extremities." (Tr. 17). Our review of the ALJ's decision also reveals that the ALJ was well aware of Dr. Gipes' and Dr. Dahl's diagnoses as he cited each doctor's treatment notes throughout his decision and credited Plaintiff's testimony that she had difficulty "holding her head up to look at a computer," (Tr. 44), by limiting Plaintiff to work that did not require "constant fixation of the neck, tilted up or down on a constant basis." (Tr. 16).

With respect to Plaintiff's contention that her testimony on the issue of her capabilities is entitled to significant weight because of her strong work history, we also disagree.[3] It is true that the testimony of a claimant with a long, productive work history will be given substantial credibility concerning his or her work-related limitations, assuming those limitations are also supported by competent medical evidence, however, in cases where remand has been ordered for consideration of

---

[3] The record reflects that Plaintiff reported earnings each quarter of every year since she graduated high school in 1998 except for two one-year periods in 2000 and 2003 where she reported no earnings; Plaintiff also reported earnings during three years while she was in high school. (Tr. 152, 161). Plaintiff worked for no fewer than seven different employers, and changed jobs at least every few years, sometimes leaving a position after only a month. (Tr. 153-55,168). Her level of earnings throughout her work history is somewhat inconsistent, likely due to frequent changes in her employment. Id. There is no evidence that Plaintiff ever attempted to return to work after she was injured.

work history, "the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work." Corley v. Barnhart, 102 F.Appx. 752, 755 (3d Cir. 2004); see e.g. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979)(noting that testimony by a claimant who had 29 years of continuous work, 15 with the same employer, as to his capabilities was entitled to substantial credibility); Witkowski v. Colvin, 999 F.Supp. 2d 764, 766 (M.D.Pa. 2014)(remanding where the ALJ failed to account for a claimant's 24 years of continuous work, 15 with the same employer, when assessing his credibility). Here, the ALJ was clearly aware of Plaintiff's work history as considered it at step four.   Moreover, even if the ALJ had discussed Plaintiff's work history in his credibility assessment, it would likely not have changed the outcome of this case. The ALJ considered the record as a whole, and cited ample support for his decision to partially discount Plaintiff's allegations of total disability.   Accordingly, we find that here Plaintiff's work history alone is insufficient to overcome the substantial evidence supporting the ALJ's credibility determination.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, we will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An order consistent with this memorandum will be entered separately.

<u>***S/Martin C. Carlson***</u>
Martin C. Carlson
United States Magistrate Judge

Dated:   October 24, 2014